IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RENEE BASIL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-12-00556 |
| MARYLAND TRANSPORTATION AUTHORITY, *et al.*, | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Renee Basil ("Plaintiff" or "Basil"), a former female employee of the Maryland Transportation Authority, has brought this employment discrimination action against Defendants Maryland Transportation Authority ("MTA"), Officer Michael A. Noel ("Officer Noel") and Captain Richard D. Perry ("Captain Perry") (collectively "Defendants") alleging sexual discrimination and harassment.  Specifically, Basil asserts claims of disparate treatment (Count I), hostile work environment (Count II) and retaliation (Count III) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.* against the MTA.  She further alleges that Officer Noel violated her rights under 42 U.S.C. § 1983 by subjecting her to a hostile work environment in violation of the equal protection clause of the Fourteenth Amendment of the Constitution (Count IV).  The Complaint also alleges retaliation under 42 U.S.C. § 1983 against Captain Perry for terminating Plaintiff after she complained of Officer Noel's sexual harassment in violation of her First Amendment rights (Count V).

Pending before this Court are Defendants' Motions to Dismiss the Original and Amended Complaints (ECF Nos. 7 & 12) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Also pending is Plaintiff's Motion Seeking Withdrawal and Redaction of Defendants' "Exhibit A" to Their Motion to Dismiss and Surreply (ECF No. 18) and Plaintiff's Motion to Allow Discovery to Commence as to Count III of Plaintiff's Amended Complaint (ECF No. 21). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants Maryland Transportation Authority, Captain Richard Perry and Officer Michael Noel's Motion to Dismiss Amended Complaint (ECF No. 12) is DENIED. Defendants' Motion to Dismiss the original Complaint (ECF No. 7)[2] and Plaintiff Renee Basil's Motion to Allow Discovery to Commence as Regards to Count III of Plaintiff's Amended Complaint (ECF No. 21) are MOOT. Additionally, Plaintiff's Motion Seeking Withdrawal and Redaction of Defendants' "Exhibit A" to Their Motion to Dismiss and Surreply (ECF No. 18) is GRANTED.[3]

---

[1] Defendants' Motion to Dismiss the Amended Complaint (ECF No. 12) only seeks dismissal of Counts I, II, IV and V and not Count III alleging retaliation in violation of Title VII against the MTA.

[2] Following Defendants' filing of the initial motion to dismiss, Plaintiff filed an Amended Complaint (ECF No. 9) as of right seeking to cure alleged defects raised in Defendants' original motion and thereby mooting said motion.

[3] Plaintiff seeks the redaction of a personal identifier from her Equal Employment Opportunity Commission ("EEOC") Discrimination Charge filed by Defendants as an exhibit to their Motion to Dismiss Amended Complaint. *See* ECF Nos. 13 & 18. Plaintiff also requests leave for the Court to consider its surreply to Defendants' arguments regarding the timeliness of her sexual harassment and discrimination claims. Defendants do not oppose the redaction or the surreply. Accordingly, Plaintiff's motion is GRANTED. Additionally, Defendants are directed to substitute a redacted version of "Exhibit A" to their Motion to Dismiss Amended Complaint within forty-eight (48) hours of the issuance of this Memorandum Opinion and accompanying Order.

## BACKGROUND

For the purposes of the subject motions, this Court accepts as true the facts alleged in Plaintiff's' Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff Renee Basil ("Plaintiff" or "Basil") enrolled in the Maryland Transportation Authority ("MTA") Police Academy on August 1, 2007 and completed her training on February 22, 2008. Pl.'s Am. Compl. ¶¶ 2, 20, 31, ECF No. 9. It is during that time that her interactions with Defendant Officer Michael A. Noel ("Officer Noel") began. *See generally* Am. Compl. Officer Noel had been a MTA employee since 1989 and was Basil's Motor Vehicle Law instructor. *Id.* ¶¶ 6, 22. Basil alleges that throughout her training at the Police Academy, Officer Noel "singled [her] out from her male colleagues and continuously and frequently made inappropriate gender based comments to" her. *Id.* ¶ 23. Particularly, Basil alleges that on two specific occasions, Officer Noel used corrections to her class work as a pretext to isolate her from her classmates and watch her "complete and inordinately large amount of push-ups." *Id.* ¶¶ 24-29. During the second occurrence, Basil alleges that Officer Noel was joined by Officer James Cox who stood by while Officer Noel asked her "inappropriate questions regarding her relationship status" and watched as she again performed push-ups for Officer. *Id.* ¶¶ 28-29. Basil alleges that she did not report these incidents to Officers Noel and Cox's supervisors at that time because she feared retaliation. *Id.* ¶ 30.

After leaving the MTA Police Academy, Basil was assigned to the Baltimore Harbor Tunnel Command where she no longer had to work with Officer Noel. *Id.* ¶¶ 32, 39. Unfortunately, a dog bite injury while in the line of duty on March 27, 2008 left her unable to return to full police officer duty and she was placed on Light Duty while awaiting a

determination concerning her application for medical retirement. *Id.* ¶¶ 33-36. Basil alleges that MTA officers seeking medical retirement are routinely assigned to Light Duty positions while awaiting the finalization of the approval process. *Id.* ¶ 37.

According to Basil, in May 2008, Officer Noel became her supervisor at the Baltimore Harbor Tunnel Command. *Id.* ¶ 39. Basil alleges that his sexual harassment behavior resumed "more aggressively and relentlessly" than before. *Id.* ¶ 40. Basil claims that, on a weekly basis, she received inappropriate emails and text messages from Officer Noel asking her about her height, weight, relationship status, whether she would go on a date with him and making other inappropriate statements. *Id.* ¶ 41. Officer Noel also allegedly ignored all her requests and pleas to stop this behavior. *Id.* ¶¶ 42, 43. Basil further alleges that Officer Noel would frequently stop by her office and ask her to join him on his work trips. *Id.* ¶ 43. Again, Basil alleges that Officer Noel ignored her rejection of these invitations and her requests that he to stop asking. *Id.* Basil claims that her co-worker Roberta Neubeck "witnessed these requests and frequently commented on [his] repeated [office] visits." *Id.* ¶ 44.

The Complaint then describes additional specific circumstances under which Officer Noel was allegedly sexually harassing Plaintiff. On one occasion, Basil claims that one of her colleagues, Dan Baker, reported to her that Officer Noel had said "Basil is hot, isn't she? I bet you f****d her." *Id.* ¶ 45. On another occasion, sometime in December 2008, Officer Noel allegedly sent her a text asking her what lingerie she would purchase to attend a Christmas party. *Id.* ¶ 47. On yet a another occasion in late December 2008 or early January 2009, Officer Noel, while speaking to another officer in front of Basil, claimed that "he had

placed video cameras in the women's restroom of the building and was going to place a camera in . . . Basil's home restroom as well so he could watch her urinate." *Id.* ¶¶ 48-50. According to Basil, the officer he was speaking to immediately told him to stop making such comments. *Id.* ¶ 51. Following this later exchange, Basil allegedly immediately contacted Sergeant Michael McCullough ("Sergeant McCullough") to report Officer Noel's behavior. *Id.* ¶ 52. Although Sergeant McCullough appeared sympathetic to her complaint, he allegedly "instructed [her] to pick her battles [,] not make waves and put up with" Officer Noel. *Id.* Thus, Basil claims that she again refrained from making further complaints for fear of jeopardizing her position. *Id.* ¶ 53. After this incident and until Officer Noel retired on March 31, 2009, Basil claims that Officer Noel allegedly continued to (a) stalk her on a daily basis, (b) stare at her, (c) "make lewd and lascivious jokes" to her, (d) proposition her, and (e) send her inappropriate text and email messages. *Id.* ¶¶ 54-55.

After a short respite, one or two months later, Basil alleges that she was informed that Officer Noel would return to the MTA as a civilian contractor. *Id.* ¶ 56. Upon learning this information, she met, to no avail, with Corporal Robert Jones ("Corporal Jones") to report Officer Noel's sexual harassment and discrimination. *Id.* ¶¶ 56-57. On June 24, 2009, while attending a lunch with Lieutenant Henry, Ms. Neubeck and Nancy Barksdale, Basil alleges that Ms. Barksdale complained of being sexually harassed by Officer Noel while working in close proximity to him. *Id.* ¶ 58. That same day, after listening to Ms. Barksdale complain of being sexually harassed and stalked by Officer Noel, Basil allegedly contacted Corporal Jones to once again report Officer Noel's behavior. *Id.* ¶¶ 59. The next day, Basil claims that she was questioned by Captain Corey McKenzie, Corporal Jones' supervisor,

concerning her allegations against Officer Noel.  *Id.* ¶ 60.  During that same meeting, Basil also explained that she had not reported the incidents to Defendant Captain Perry directly because of his close friendship and mentor relationship with Officer Noel.  *Id.* ¶ 61.

On June 26, 2009, Basil was called into Captain Perry's office.  *Id.* ¶ 63.  During that meeting, Captain Perry informed her that she was being terminated because "she was no longer fit for duty due to the dog bite she sustained in early 2008."  *Id.* ¶¶ 63-64.  Basil claims that Captain Perry's reason for her termination was a pretext as it is customary for officers awaiting determinations concerning their medical retirement application to be placed on Light Duty.  *Id.* ¶ 65.  Moreover, the most recent letter concerning her employment status had extended her assignment to Light Duty through June 30, 2009.  *Id.* ¶ 67.  According to Basil, she was terminated by the MTA and Captain Perry in retaliation for reporting Officer Noel's behavior toward herself and Ms. Barksdale.  *Id.* ¶ 72.  Basil alleges that Officer Noel was eventually discharged following a sexual harassment complaint by Captain McKenzie's wife.  *Id.* ¶¶ 69-70.  She further claims that upon conducting an investigation of Officer Noel, the MTA "found sexually explicit material on [his work] computer and emails . . . sent to [MTA] female employees that were sexual in nature."  *Id.* ¶ 71.

On September 21, 2009, Basil filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") concurrently with the State or local employment discrimination agency.  *Id.* ¶ 10; *see also* EEOC Charge of Discrimination at 2, Ex. A, Def.'s Mem. in Supp. of Mot. to Dismiss, ECF No. 13.  In the Charge of Discrimination, she alleged sexual discrimination and retaliation.  *See* EEOC Charge of Discrimination.  She also indicated that the discrimination was continuous in nature from

August 2007 to June 26, 2009.  *Id.*  In a rebuttal statement of facts to the position statement filed by the MTA with the EEOC, Basil reiterated her allegations that Officer Noel's sexually harassing and discriminatory behavior began in August 2007 and continued until his retirement in March 2009.  Mar. 04, 2011 Basil Ltr., Ex. 1, Pl.'s Mem. in Opp. to Mot. to Dismiss, ECF No. 14-1.  On February 22, 2012, after over 180 days had elapsed since filing her Charge with the EEOC, Basil instituted this suit against the Maryland Transportation Authority, Officer Noel and Captain Perry.  Basil also requested a right to sue letter from the EEOC which she received on March 10, 2012.  Pl.'s Am. Compl. ¶ 13.  The Amended Complaint alleges disparate treatment (Count I), hostile work environment (Count II) and retaliation (Count III) against the MTA in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*  Additionally, Basil alleges 42 U.S.C. § 1983 claims against Officer Noel and Captain Perry individually for respectively subjecting her to a hostile work environment in violation of the Equal Protection Clause (Count IV) and violating her First Amendment rights (Count V).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of*

*Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  In ruling on such a motion, this Court is guided by the Supreme Court's instructions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which "require complaints in civil actions be alleged with greater specificity than previously was required."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).   The Supreme Court's *Twombly* decision articulated "[t]wo working principles" courts must employ when ruling on Rule 12(b)(6) motions to dismiss.  *Iqbal*, 556 U.S. at 678.

First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference.  *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.).  Second, a complaint must be dismissed if it does not allege "a plausible claim for relief."  *Id.* at 679.  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.   Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim.  It need only *allege facts* sufficient to *state* elements of the claim.") (emphasis in original) (internal quotation marks and citation omitted).  In short, a court must

"draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief." *Iqbal*, 556 U.S. at 664.

ANALYSIS

**I.     Title VII Claims Against the MTA (Counts I & II)**

Defendants contends that Plaintiff's claims for disparate treatment in Count I and hostile work environment in Count II against the Maryland Transportation Authority ("MTA") should be dismissed because she failed to file a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").   Specifically, Defendant argues that because Maryland is a deferral state,[4] the Charge of Discrimination should have been filed within 240 days of the last alleged date of sexual harassment or discrimination.   As discussed below, Defendant's argument fails both in light of the legal precedent and of Plaintiff's allegations.

Title VII establishes two potential limitations periods within which a charge of discrimination must be filed with the EEOC.   *Edelman v. Lynchburg Coll.*, 228 F.3d 503, 506 (4th Cir. 2000).   The general limitations period is 180 days after the alleged unlawful employment practice.   *Id.*   If, however, state law proscribes the alleged employment practice and the charge is to be first filed with a state deferral agency, then the limitations period is extended to 300 days.   *Id.; see also Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998).   Maryland is a "deferral state" in which the 300-day limitations period applies.   *See, e.g.,*

---

[4] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof."   42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2).   Maryland is classified as a deferral state because the Maryland Commission on Human Relations ("MCHR") constitutes a state agency that is capable of providing relief from discrimination. *See Vanguard Justice Society, Inc. v. Hughes*, 471 F. Supp. 670, 680 n.26 (D. Md. 1979).

*Prelich v. Medical Resources, Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2011).  When a charge is filed with a state agency in a deferral state, the complainant cannot file with the EEOC until either 60 days have elapsed from the initial filing date with the state or the state terminates its proceedings.  42 U.S.C. § 2000e-5(c).  "When a charge is sent first to the EEOC, . . . the EEOC will refer the claim to the state agency."  *Tinsley*, 155 F.3d at 439.  After the 60 day period has elapsed, "the charge is deemed filed with the EEOC . . . and the 300-day limitations period within which a charge must be filed with the EEOC is effectively reduced to 240 days."  *Id.*

The Supreme Court has stated that where a complainant files her claim with the EEOC after the expiration of the 240 days but within the 300-day limitations period, her "right to seek relief under Title VII will nonetheless be preserved if the State happens to complete its consideration of the charge prior to the end of the 300-day period."  *Mohasco Corp. v. Silver*, 447 U.S. 807, 815 n.16 (1980).  Additionally, the United States Court of Appeals for the Fourth Circuit has held that the 300-day period applies in a deferral state when the "plaintiff file[d] with a state or local employment discrimination agency either before filing with the EEOC, or *concurrently therewith*."  *White v. BFI Waster Servs., LLC*, 375 F.3d 288, 292 (4th Cir. 2004) (citing *Tinsley*, 155 F.3d at 442) (emphasis added).  In Maryland, the EEOC must forward the discrimination charges it receives to the Maryland Commission on Human Relations ("MCHR") within 48 hours.  *EEOC v. Techalloy Md., Inc.*, 894 F.2d 676, 678 (4th Cir. 1990).  This Court has previously held that "a charge is deemed timely if it is sent to the EEOC within 300 days after the alleged unlawful practice."  *Francis v. Bd. of Sch. Comm'rs*, 32 F. Supp.2d 316, 321 (D. Md. 1999).  Moreover, where the complaint alleges that

the discrimination charge was filed with the EEOC within the 300-day limitations period, this Court has held that "a motion to dismiss for untimely filing must be denied, as 'further proceedings [may] reveal that" the MCHR received the charge within the 300 days. *Templeton v. First Tenn. Bank, N.A.*, WDQ-09-3280, 2010 WL 2292493, at *3 n.10 (D. Md. June 3, 2010), *aff'd in part, vacated in part on other grounds*, 424 F. App'x 249 (4th Cir. 2011).

In this case, while the MTA seeks to argue that the last alleged act of sexual harassment or discrimination occurred in late December 2008 or early January 2009, Basil's Charge of Discrimination along with her rebuttal statement clearly allege that Officer Noel's sexual harassment and discriminatory behavior was continuous in nature and began in August 2007 until at least his retirement on March 31, 2009.  Additionally, Basil not only alleges that she kept quiet because she feared for her position, but that when she did in fact speak up on three occasions, she was told to "pick her battles," ignored and ultimately fired. Because Basil filed her Charge of Discrimination with the EEOC on September 21, 2009 and she alleges continuous sexual harassment until at least March 31, 2009, the Charge was timely filed within the 300-days limitations period.

Defendants do not contend that Basil failed to state a claim for disparate treatment or hostile work environment under Title VII as such a contention could not stand.  To state a *prima facie* claim of disparate treatment, Basil must allege that (1) she is a member of a protected class, (2) her job performance was satisfactory, (3) she was subjected to an adverse employment action, and (4) similarly situated employees outside of her class received more favorable treatment.  *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).  To assert a claim on the basis of a hostile work environment because of sexual harassment, a

plaintiff must show that the offending conduct (1) was unwelcome, (2) based on plaintiff's sex, (3) was severe enough to alter the conditions of plaintiff's employment and create an abusive work environment, and (4) was imputable to the employer. *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008). Basil's Amended Complaint sufficiently alleges factual content in support of each prong of these claims. Accordingly, Defendants' Motion to Dismiss Counts I & II is DENIED.

## II.   Section 1983 Claims Against Officer Noel & Captain Perry (Counts IV & V)

Defendants argue that Basil's Section 1983 claims against Officer Noel and Captain Perry should be dismissed for failure to state a claim and because qualified immunity bars recovery. Defendants further contend that Basil's Section 1983 claim against Officer Noel is untimely.

Initially, as discussed above, this Court has already rejected Defendants' timeliness argument. As such, Basil's claim against Officer Noel was timely filed. Although Defendants note the general rule that "a plaintiff cannot assert violations of Title VII through § 1983," this Court has previously allowed the assertion of claims under § 1983 for violations of a plaintiff's Fourteenth Amendment right to equal protection. *Causey v. Balog*, 929 F. Supp. 900, 913 (D. Md. 1996). Additionally, the United States Court of Appeals for the Eight Circuit recently concluded that "while Title VII provides the exclusive remedy for employment discrimination claims created by its own terms, its exclusivity ceases when the employer's conduct also amounts to a violation of a right secured by the Constitution." *Henley v. Brown*, 686 F.3d 634, 642 (8th Cir. 2012) (citation omitted). In doing so the Eight Circuit noted that the Fourth Circuit had reached the same conclusion in the past. *Id.* (citing

*inter alia Booth v. Maryland*, 327 F.3d 377, 382-83 (4th Cir. 2003) ("Title VII does not preclude a public sector employee from bringing a § 1983 action based on alleged violations of the Equal Protection Clause.")).  As such, Basil may assert claims for violations of her rights under the Equal Protection Clause of the Fourteenth Amendment and the First Amendment along with her employment discrimination claims under Title VII.

In order to state a claim under Section 1983, a plaintiff must allege (1) a deprivation of a right or privilege secured by the Constitution and laws of the United States and that (2) the deprivation was caused by an individual acting under color of state law.  *West v. Atkins,* 487 U.S. 42, 48 (1988).  Alleging individual liability under Section 1983 requires statements showing that the defendant personally acted to deprive the plaintiff of her rights.  *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).  The Defendant "must have had personal knowledge of and involvement in the alleged deprivation of appellant's rights in order to be liable.  *Id.*  The Fourth Circuit has also held that "the factual elements necessary to establish a *prima facie* case of employment discrimination are the same for Title VII, Section 1981, and Section 1983 claims."  *Hooper v. State of Md., Dept. of Human Resources*, 45 F.3d 426 (4th Cir. 1995) (citing *Gairola v. Commonwealth of Virginia Dept. of Gen. Services*, 753 F.2d 1281, 1285 (4th Cir. 1985)).

In Count IV, Basil alleges that Officer Noel, while acting as her supervisor, subjected her to a hostile work environment in violation of her rights under the Equal Protection Clause by sexually harassing her and discriminating against her on the basis of her sex.  Her Complaint then alleges in detail the specific offensive behavior perpetrated by Officer Noel.  Moreover, her claims satisfy the above mentioned elements of a *prima facie* Title VII hostile

work environment claim. Accordingly, Basil has sufficiently alleged a claim of individual liability against Officer Noel under Section 1983.

In Count V, Basil alleges that Captain Perry, while acting under color of law, retaliated against her for having complained of sexual harassment in violation of her First Amendment Rights. To state a *prima facie* case for retaliation, a plaintiff must allege (1) that she engaged in a protected activity; (2) that the employer acted adversely against her; and (3) that there was "a causal connection between the protected activity and the asserted adverse action." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011). If a plaintiff states a *prima facie* case, the burden then shifts to the defendant to offer a legitimate, non-retaliatory justification for the adverse action. If the defendant does so, the onus is then on the plaintiff to allege that the employer's proferred explanation is pretext for retaliation. *Yashenko v. Harrah's NC Casino, Inc.*, 446 F.3d 541, 551 (4th Cir. 2006); *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998); *see also McDonnell Douglas v. Green*, 411 U.S. 792 (1973) (establishing the burden-shifting framework). The "protected activity" that forms the foundation of a retaliation claim is generally activity relating to a Title VII claim. *See Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990) ("The purpose of section 2000e-3's participation clause is to protect the employee who utilizes the tools provided by Congress to protect his rights." (internal quotation marks omitted)); *see also Laughlin, supra*, 149 F.3d at 259 (4th Cir.1998). Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a). Participatory activities are vigorously protected to ensure employees' continuing access to

the Equal Employment Opportunity Commission and the enforcement process. *Laughlin*, 149 F.3d at 259. With respect to causation, this Court has held that an inference of a causal connection exists where the adverse action occurs "shortly after learning of the protected activity." *Cepada v. Bd. Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011) (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)).

In this case, Basil has alleged that on June 26, 2009, the day after having formally complained of Officer Noel's behavior to Captain McKenzie and informing him that she had not brought her claims to the attention of Captain Perry in light of his close relationship with Officer Noel, she was called into Captain Perry's office who proceeded to notify her that her employment with the MTA was terminated. Although Captain Perry explained that her termination was the result of her inability to perform her duties in light of the dog bite she sustained in early 2008, Basil has alleged that this reason was a pretext as it is common for people to perform Light Duty while awaiting a decision regarding their medical retirement application. At this stage of the proceedings, this Court must consider the facts in the light most favorable to the plaintiff, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Accordingly, Basil has stated a *prima facie* case of retaliation under Section 1983 against Captain Perry.[5]

Finally, this Court is mindful of "the importance of resolving immunity questions at the earliest possible stage in the litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

---

[5] In response to Defendants' argument that Captain Perry merely gave her the termination letter written by the MTA's Executive Secretary  Ronald Freeman, Plaintiff seeks, in a footnote, "leave to Amend the Complaint to add Mr. Freeman as a party Defendant consistent with the agency's position –*nunc pro tunc* ." Pl.'s Resp. in Opp. to Mot. to Dismiss at 14 n.10, ECF No. 14. As this is not the proper procedure for such an amendment, this Court will disregard Plaintiff's request at this time and awaits further briefing on this issue should the Plaintiff seek to formally amend the Complaint.

However, the Fourth Circuit has noted that principles of qualified immunity do not " 'give special substantive favor to the defense.' " *Henry v. Purnell*, 619 F.3d 323, 333 (4th Cir. 2010) (quoting *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003)).  It is simply premature to rule upon the issue of qualified immunity in the context of a motion to dismiss as there has been no discovery or development of a record in this case.  Indeed, the issues with respect to whether there were constitutional violations and "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier v. Katz*, 533 U.S. 194, 202 (2001), are highly fact-dependent.  Moreover, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010) (citation omitted). Thus, Basil has properly stated claims under 42 U.S.C. § 1983 against both Officer Noel and Captain Perry.  Therefore, Defendants' Motion to Dismiss Counts IV and V is DENIED.


CONCLUSION

For the reasons stated above, Defendants Maryland Transportation Authority, Captain Richard Perry and Officer Michael Noel's Motion to Dismiss Amended Complaint (ECF No. 12) is DENIED.  Defendants' Motion to Dismiss the original Complaint (ECF No. 7) and Plaintiff Renee Basil's Motion to Allow Discovery to Commence as Regards to Count III of Plaintiff's Amended Complaint (ECF No. 21) are MOOT.  Additionally, Plaintiff's Motion Seeking Withdrawal and Redaction of Defendants' "Exhibit A" to Their

Motion to Dismiss and Surreply (ECF No. 18) is GRANTED and Defendants are directed to substitute a redacted version of "Exhibit A" to their Motion to Dismiss Amended Complaint within forty-eight (48) hours of the issuance of this Memorandum Opinion and accompanying Order.

A separate Order follows.

Dated:          February 15, 2013          /s/_____

                                           Richard D. Bennett
                                           United States District Judge