IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RENEE BASIL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-12-0556 |
| MARYLAND TRANSPORTATION | * | |
| AUTHORITY, ET AL., | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Plaintiff Renee Basil filed this action against the Defendants Maryland Transportation Authority ("MdTA") alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and against Michael A. Noel ("Officer Noel") and Richard D. Perry ("Captain Perry") (collectively "Defendants") pursuant to 42 U.S.C. § 1983 for violations of her rights under the Constitution of the United States. Presently pending is the Defendants' Motion for Summary Judgment (ECF No. 58). The parties' submissions have been reviewed and no hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md. 2011). For the reasons that follow, the Defendants' Motion is DENIED.

## BACKGROUND

For purposes of the pending Motion for Summary Judgment, this Court views the facts and any inferences therefrom in the light most favorable to the Plaintiff, the non-

moving party.  *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

Plaintiff Basil enrolled in the Maryland Transportation Authority ("MdTA") Police Academy

on August 1, 2007 and completed her training on February 22, 2008.  Pl.'s Am. Compl. ¶¶ 2,

20, 31, ECF No. 9.  Officer Noel had been an MdTA employee since 1989 and was Basil's

Motor Vehicle Law instructor.  *Id.* ¶¶ 6, 22.  The MdTA has an anti-fraternization policy and

prohibits the use of sexual language.  *See* MdTA Police Academy Rules 5, 9-10, ECF No. 64-

8.  Nevertheless, throughout Basil's training at the Police Academy, Officer Noel "singled

[her] out from her male colleagues and continuously and frequently made inappropriate

gender based comments to" her.  Am. Compl. ¶ 23.  Particularly, Officer Noel frequently

asked her whom she was dating and whether she was interested in dating anyone, stared at

her, told her dirty jokes, and went out of his way to make physical contact with her by

intentionally brushing up against her in the hallway on too many occasions to count.  *See*

Deposition of Renee Basil 57-59, 64-65, 76-77, ECF No. 64-9.  Additionally, Officer Noel

held Basil alone after class, purportedly to discuss class work; as punishment for incorrect

answers on an assignment, he instructed her to do push-ups until he told her to stop.  Basil

Dep. 52-53.  On another occasion, Officer Noel called Basil into his office, in isolation from

her classmates, again stating the need to discuss corrections to her class work.  Basil Dep.

54-57.  Officer Noel was joined by Officer James Cox, who stood by while Officer Noel

asked her inappropriate questions regarding her relationship status.  *Id.*  When Basil told

Noel that the answers were none of his business, Noel again ordered her to do push-ups

while Officer Cox watched.  *Id.*

Basil alleges that she did not report these incidents to Officers Noel and Cox's

supervisors at that time because she feared retaliation. *Id.* at 57-59. In particular, Basil cited her knowledge of the close relationship between Officer Noel and Defendant Captain Perry, the Commander of the Academy. *Id.* Officer Noel considered Captain Perry like a "father." Deposition of Michael Noel 72, ECF No. 64-7. Likewise, Captain Perry considered himself to be Officer Noel's "mentor." Deposition of Richard Perry 20, ECF No. 64-8. Perry had trained Noel and provided advice throughout Noel's career. Noel Dep. 11; Perry Dep. 20. When Officer Noel was investigated by the Internal Affairs Unit in 2008 for improperly using MdTA computers for personal purposes, Captain Perry filed an Endorsement, asking that the charge of conduct unbecoming an officer not be sustained and for a more lenient penalty. Perry Dep. 147-49; MdTA Internal Affairs Unit Complaint Against Personnel Report, ECF No. 64-11. Outside of work, Captain Perry and Officer Noel socialized extensively, dining, bowling, playing baseball, and doing "everything together." Perry Dep. 212-14. Knowing how close Officer Noel was to Captain Perry, Basil testified that she "just wanted to get through the Academy" and "didn't know what to do." Basil Dep. 78.

After graduating from the Academy in February 2008, Basil was assigned to the Baltimore Harbor Tunnel Command where she no longer had contact with Officer Noel. *Id.* at 84. Soon after, on March 27, 2008, she sustained a dog bite injury that left her unable to return to full police officer duty. *Id.* at 82. She was placed on light duty while awaiting a determination concerning her application for medical retirement.[1] *Id.* at 83-84. MdTA officers seeking medical retirement are routinely assigned to light duty positions while

---

[1] Basil was bitten while attempting to help a woman in the street who had been knocked down by the dog. Though Basil was technically not on duty with the MdTA at the time of the dog bite, her injury was deemed to have been "while in the line of duty." Basil Dep. 81-82.

awaiting the finalization of the approval process.  Am. Compl. ¶ 37; Declaration of Kimberly Staigerwald, ECF No. 64-25.  In general, a light duty assignment lasted up to 180 days, which could be extended an additional 180 days.  Letter from Perry to Basil of April 22, 2009, ECF No. 64-30.  As a matter of practice, personnel regularly remained on light duty for more than one year, and additional ninety-day extensions to light duty status were routinely granted while awaiting retirement approval.  Deposition of MdTA Rule 30(b)(6) Designee Frederick Joseph Ruff 35-41, ECF No. 6.

In May 2008, soon after Basil was placed on light duty, Officer Noel was also assigned to Baltimore Harbor Tunnel Command.  Although he was not Basil's direct supervisor, she was required to follow his commands based on rank and her light duty status. Basil Dep. 91; *see also* Deposition of Michael McCullough 11-14, ECF No. 64-15.  Basil alleges that Officer Noel's sexually-charged behavior resumed "more aggressively and relentlessly" than before.  Am. Compl. ¶ 40.  Officer Noel admits that he came to Basil's office "constantly."  Noel Dep. 247.  Basil's co-worker, Roberta Neubeck, testified that Officer Noel came by two to three times per week without a work-related reason and always spoke to Basil out of the hearing of others, making Basil appear uncomfortable.  Deposition of Roberta Neubeck 12, 28-32, ECF No. 64-20.  Additionally, because one of Officer Noel's duties was to monitor the use of access cards to enter buildings at the Harbor Tunnel Command, he was able to determine where Basil was throughout the day, *see* Deposition of Ricky F. Williams 24-25, ECF No. 64-16; Deposition of Mark Henry 63, ECF No. 64-17, and would appear when Basil was in other locations at the facility.  Basil Dep. 118-19.  Basil also received inappropriate emails and text messages from Officer Noel asking her about her

height, weight, relationship status, and whether she would go on a date or on trips with him. *Id.* at 93-97; MdTA Special Report, ECF No. 64-18. She reported the inappropriate emails to Sergeant Michael McCullough, who confirmed that Basil was upset by communications that were "basically of a harassing nature," and "basically of a sexual nature." McCullough Dep. 15-16.

On one occasion, Officer Noel asked a co-worker, Daniel Baker, whether Baker was "f***ing" Basil. Deposition of Daniel Baker 49-51, ECF No. 64-13. Basil had confided in Baker that Officer Noel had made unwanted advances, and Baker reported the latest comment Officer Terry Hendrickson. *Id.* In December 2008, Officer Noel sent Basil a text message asking whether she would purchase lingerie for Christmas from the "racy" store Frederick's of Hollywood. Basil Dep. 105; Pl.'s Opp. 13 n.7. Also, in late December 2008 or early January 2009, Officer Noel, while speaking to Officer Hendrickson in front of Basil, claimed that he had placed video cameras in the women's restroom of the building and was going to place a camera in Basil's home restroom as well so he could watch her urinate. Basil Dep. 105-07, 149. Officer Hendrickson, who stated that he had daughter's Basil's age, told Officer Noel not to talk that way.[2] EEOC Charge of Discrimination, ECF No. 13 Ex. A. Basil immediately contacted Sergeant McCullough to report Officer Noel's comments because she feared that he actually had access to her home address. Basil Dep. 106, 111; McCullough Dep. 22-23. Sergeant McCullough instructed her "to pick her battles" and "not make waves" as to Officer Noel because of his relationship with Captain Perry. Basil Dep.

---

[2] Sergeant McCullough confirms this interaction, although Officer Hendrickson stated that he does not specifically remember Officer Noel making the statement regarding putting a camera in Basil's bathroom. McCullough Dep. 22-23; Deposition of William Booker 106, ECF No. 64-27.

110-12, 126, 148, 151. Thus, Basil again refrained from making further complaints for fear of jeopardizing her position. Am. Compl. ¶ 53. Basil testified that she was let down by Sergeant McCullough, whom she felt was her "only friend" and "trusted him with this information." Basil Dep. 113.

Despite Basil's repeated requests for Officer Noel to stop his behavior because it was affecting her ability to perform her job, he was "relentless" and "wouldn't leave [her] alone." Basil Dep. 101-02, 116-17. Officer Noel would tell Basil "dirty jokes," "stare at [her] breasts," and "get close" to her physically, making Basil feel "disgusted." *Id.* at 121, 127. Officer Noel's conduct toward Basil continued until he retired on March 31, 2009. *Id.*

During this time period, Basil was still working on light duty status while she awaited the approval of the medical retirement application. Captain Perry was her "main contact" for retirement. Basil Dep. 136. After her initial period of one year of light duty expired, she received several routine one-month extensions. *Id.*; *see, e.g.*, Letter from Perry to Basil of April 22, 2009, ECF No. 64-30. On May 29, 2009, Basil received a letter granting her an extension until July 30, 2009. Letter from Perry to Basil of May 29, 2009, ECF No. 64-24. Basil expected that, in keeping with the MdTA's customary practice and after being assured by Captain Perry, her light duty appointment would be extended until her medical retirement was approved. Basil Dep. 223-25. Furthermore, Basil had verbal offers to continue working as a civilian at the MdTA in the Quartermaster department, after her retirement from police work, as several others had done. Basil Dep. 139, 166-69, 187-88.

On May 26, 2009 Basil was informed that Officer Noel would return to the MdTA as a civilian contractor. Basil Dep. 128-29. Upon learning that Officer Noel had returned, she

reported his history of inappropriate sexual conduct to Corporal Robert Jones. *Id.* 128-30. Basil hoped that Corporal Jones would bring her story to the attention of higher-ranked authorities, but he did not. *Id.* at 130-32.

On June 24, 2009, Basil had lunch with Retired Lieutenant Colonel Mark Henry, and co-workers Roberta Neubeck and Nancy Barksdale. Ms. Barksdale complained of being sexually harassed and stalked by Officer Noel while working in close proximity to him. Neubeck Dep. 30-31; Deposition of Mark Henry 62-63, ECF No. 64-17.[3] That same day, Basil again reported Officer Noel's behavior toward herself and other women to Corporal Jones and asked for a meeting with Captain Corey McKenzie, Corporal Jones' supervisor. Basil Dep. 132. The next day, Basil detailed her allegations against Officer Noel to Captain McKenzie. *Id.* at 133-34. Basil also explained to Captain McKenzie that she had not reported the incidents to Defendant Captain Perry directly because of his close friendship and mentor relationship with Officer Noel. *Id.* at 134.

The following day, June 26, 2009, Captain McKenzie was instructed by Captain Perry to send Basil to his office. McKenzie Dep. 79-80. During the ensuing meeting, Captain Perry informed her that she was being "terminated" because "she was no longer fit for duty due to the dog bite she sustained in early 2008," and she was escorted off the premises and told that she was not allowed to return. Basil Dep. 148, 163-64; Am. Compl. ¶¶ 63-64. It was also implied that because Basil was terminated, the offer to work as a civilian in the

---

[3] In a later statement to an MdTA investigator, Barksdale said that she did not say "harass" or "stalk." She stated that she did receive ten to fifteen emails that "crossed the line," but that Officer Noel stopped when she told him to. She then reported the emails to Captain McKenzie, who said that he was aware of issues with Officer Noel. Statement of Nancy Barksdale, ECF No. 59-3 at 46.

Quartermaster department was no longer available, and she therefore did not apply. Basil Dep. 170. Basil was surprised at her discharge because she had been told on multiple occasions by Captain Perry that her light duty assignment would be extended until she retired. *Id.* at 88, 136, 223-225. Other employees were also surprised that Basil was discharged before her retirement became final. Neubeck Dep. 28; McCullough Dep. 42. Basil claims that Captain Perry's reason for her discharge was a pretext as it is customary for officers awaiting determinations concerning their medical retirement application to be placed on light duty. Am. Compl. ¶ 65. According to Basil, she was terminated by the MdTA and Captain Perry in retaliation for reporting Officer Noel's behavior toward herself and Ms. Barksdale. *Id.* ¶ 72.

Several other women employed by the MdTA reported similar conduct by Officer Noel during the same general time period. Heidi Faircloth, a Telephone Communication Operator, stated that Officer Noel sent to her cell phone a photograph of what he claimed were his genitalia. Deposition of Heidi Faircloth 22-23, ECF No. 64-1. Ms. Faircloth also testified that Officer Noel showed a photograph of a woman's naked breasts to MdTA Captain Jackson, and told him that they were Ms. Faircloth's. *Id.* at 11-14. Captain Jackson's response was to question Ms. Faircloth as to her involvement with Officer Noel. *Id.* Ms. Faircloth did not file a complaint against Officer Noel because she feared retaliation. *Id.* at 15-16, 24. Amber Hart stated that Officer Noel showed her an empty plastic bag and told her it was her new bathing suit, and also would come to her office and physically nudge her in the side until she told him to stop. Statement of Amber Hart, ECF No. 64-2. Another Telephone Communication Officer, Marcella Price, had a brief sexual relationship with

Noel, which he solicited using MdTA email. Deposition of Marcella Price 12, 20-21, 42, ECF No. 64-3. Price ended the relationship when Officer Noel asked her to participate in a threesome with Officer Cox, whom Noel described as having a "big d\*\*k." *Id.* 20-21. Officer Cox is the same officer who was in Officer Noel's office on the second occasion when the Plaintiff was forced to do pushups. At the time of Price's brief relationship with Officer Noel, he was in charge of approving requests for overtime and days off for Telephone Communication Officers. *Id.* 8, 26. Price testified that another Telephone Communications Officer, Erin Rossi, asked Officer Noel for an approval, to which he responded, "If I do this for you, what will you do for me?" *Id.* at 24-26.

Amanda McKenzie, the wife of Captain McKenzie, also testified that Officer Noel often made inappropriate sexual comments to her, despite her telling him to stop. Deposition of Amanda McKenze 25-26, ECF No. 64-4. The incident that ultimately led to Officer Noel's termination occurred on October 19, 2009, when he touched Ms. McKenzie on the buttocks. *Id.* at 42-44. Ms. McKenzie reported the incident, but not before checking with her husband based on her fear that because of Officer Noel's status with the MdTA, they both could face retaliation. *Id.* at 21-24. By that time, Basil had already complained repeatedly about Officer Noel's conduct and been discharged. Ms. McKenzie was unaware of Basil's previous allegations, and was upset that despite the MdTA's knowledge of such complaints, Officer Noel was permitted to work with her and other women. McKenzie Dep. 46. Officer Noel was eventually terminated following Ms. McKenzie's complaint. Ruff Dep. 130-31.

On September 21, 2009, Basil timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging a continuing pattern of harassment. EEOC Charge of Discrimination 2, ECF No. 13 Ex. A. In response to the EEOC Charge, the MdTA undertook an investigation of the allegations against Officer Noel. Major Joseph Ruff of the MdTA assigned William Booker, a former Baltimore Police Department Detective Sergeant who worked at the time as a civilian contractor conducting background checks on new hires at the MdTA, to investigate. Deposition of William Booker 14-19, 214. Booker, who had never conducted an EEOC investigation before, updated Major Ruff from time to time, via email and meetings. Booker Dep. 19-21. Booker produced a written report, finding nothing inappropriate in the emails and concluding that no sexual harassment or retaliation took place. MdTA Special Report, Confidential Investigation, ECF No. 64-18. Booker testified, however, that he was very deferential to MdTA officers, particularly Captain Perry, in pursuing his investigation. Booker Dep. 71-79, 216. He stated that he knew he served at the pleasure of the MdTA, and that there was no need to question Captain Perry's truthfulness. *Id.* at 78-79, 162. Additionally, Booker was surprised to learn of additional incidences of Officer Noel's sexually explicit conduct toward other female MdTA employees that he did not uncover in his investigation and may have changed his determination. *Id.* at 144-46. Furthermore, according to the MdTA's internal policies, a complaint such as the one against Officer Noel must be referred to the Internal Affairs Unit. *See* MdTA Directives Manual, Code of Conduct §§ III.3.1 to 3.2, ECF No. 64-28. Major Ruff testified that the procedure was not followed in this case because Officer Noel was at the time a civilian contractor, but admitted that the Code of Conduct applies to

civilians and sworn members of the MdTA.  Ruff Dep. 88-90, ECF No. 64-6; Code of

Conduct § I.2.1.

On February 22, 2012, Basil filed suit in this Court against the Maryland

Transportation Authority, Officer Noel, and Captain Perry.  Compl., ECF No. 1.  On or

about March 10, 2012, the EEOC closed its file and issued Basil a right to sue letter.  Am.

Compl. ¶ 13-14.  Basil subsequently filed an Amended Complaint, alleging disparate

treatment (Count I), hostile work environment (Count II), and retaliation (Count III) against

the MdTA in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*  Additionally, Basil alleges

individual claims pursuant to 42 U.S.C. § 1983 against Officer Noel for subjecting her to a

hostile work environment in violation of the Equal Protection Clause (Count IV) and against

Captain Perry for violating her First Amendment rights (Count V).  The Defendants moved

to dismiss the Amended Complaint, and this Court denied the Motion to Dismiss on

February 15, 2013.[4]  Mem. Op. & Order, ECF Nos. 23-24.  Following a period of discovery,

the Defendants moved for summary judgment.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A

material fact is one that "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact

exists "if the evidence is such that a reasonable jury could return a verdict for the

---

[4] Defendants also filed a Motion to Dismiss the original Complaint, ECF No. 7, which was moot.
Order, ECF No. 24.

nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

## ANALYSIS

The Defendants move for summary judgment as a matter of law as to all of the Plaintiff's claims. For the reasons that follow, the Defendants' Motion is denied in all respects.

### I. Count I - Disparate Treatment

The Defendants move for summary judgment as to Count I, arguing that Basil cannot make a prima facie case of disparate treatment based on gender against the Maryland Transportation Authority, and that Basil was terminated for a legitimate non-discriminatory reason. Where, as here, there is no direct evidence of discrimination,[5] a plaintiff may prove a claim through circumstantial evidence by satisfying the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of gender discrimination based on disparate treatment under the *McDonnell Douglas* standard, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action . . . ; and (4) that similarly-situated employees outside the

---

[5] In this context, direct evidence means "conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested employment decision." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)) (internal quotation marks omitted).

protected class received more favorable treatment." *Gerner v. Cnty. of Chesterfield, Va.*, 674 F.3d 264, 266 (4th Cir. 2012) (quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

If the Plaintiff makes a prima facie case, it "creates a presumption of discrimination, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision." *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). "[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 722 (4th Cir. 2013) (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000)). Accordingly, if a defendant meets its burden to articulate a legitimate non-discriminatory reason, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show that the stated reason is a pretext for discrimination. *Laber*, 438 F.3d at 430 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)). Thus, "[a]lthough the evidentiary burdens shift back and forth," a plaintiff always bears the ultimate burden of persuading the trier of fact that a defendant intentionally discriminated against her. *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

In this case, it is undisputed that Basil is in a protected class and that her discharge was an adverse employment action. Moreover, while it is agreed that the Plaintiff was medically unable to perform full police duties, the third element of a prima facie case is also

satisfied because there is no contention by the Defendants that her performance in the light duty position was lacking. Rather, the Defendants base their Motion as to Count I solely on their contention that no male officers were treated differently than she was. The Defendants also argue that, because Basil was the only employee who was on probation at the time she was separated from employment with the MdTA for being physically unfit for police work, she has not identified any other similarly situated male employees. Therefore, the Defendants argue, Basil has not shown that sex was a motivating factor in her termination. *Phillips v. Raytheon Applied Signal Tec., Inc.*, No. ELH-11-3230, 2013 WL 5440802, at *15 (D. Md. Sept. 27, 2013), *aff'd*, ___ F. App'x ___ (Table), 2014 WL 703936 (4th Cir. Feb. 25, 2014) (per curiam).

However, while evidence regarding similarly situated employees is often the determinative factor in a discrimination case, such so-called "comparator" evidence is not required as a matter of law in order to succeed on a disparate treatment claim. *Laing*, 703 F.3d at 719-20 (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 544-46 (4th Cir. 2003)); *Smith v. Vilsack*, 832 F. Supp.2d 573, 583-84 (D. Md. 2011). Moreover, although the Plaintiff's title or status may have technically been different, according to the Defendants, Basil was "provided with the same light duty privileges as other full duty officers." *See* Defs.' Reply 4, ECF No. 69. Additionally, the Defendants assert that the process of separation from employment is "the same for all incapacitated employees," whether they are probationary employees or whether they have completed probation. *See* Defs.' Mem. 16 n.8, ECF No. 59. With those principles in mind, this Court notes that Basil has provided evidence that several male employees were not discharged until their retirements became

final.  *See* Excerpts from State Light Duty Records, ECF No. 64-26.  Furthermore, Basil is not, as the Defendants argue, in a class of one.  The fact that some other females were not terminated before their medical retirements became final does not shield the MdTA from a disparate treatment claim.  *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 855-56 (4th Cir. 2001) ("[S]imply because Sears hired other Hispanic individuals in other departments does not mean that its failure to hire [the plaintiff] was free from discriminatory intent.").  To accept the Defendants' argument would require a female employee alleging discrimination to establish that the employer discriminated against all women in the workplace.  "That, sensibly, is not how Title VII works."  *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587-88 (7th Cir. 2011).

Basil's repeated complaints were based on conduct that was connected directly to her sex.  Although she may have received more days on light duty than some male officers, it is not simply the number of days allowed on light duty before the end of her employment, but the change in the date of termination after Basil complained, that is relevant to her disparate treatment claim.  In not being allowed to remain employed on light duty until her medical retirement was finalized, a reasonable finder of fact could conclude that Basil was treated differently than similarly situated male officers and that treatment was motivated by her gender.  Therefore, Basil has stated a prima facie case of disparate treatment based on sex.

The Defendants argue that even if Basil has stated a prima facie case of discrimination, there was a legitimate nondiscriminatory reason for taking the adverse employment action—because she was seeking medical retirement and could not work as a police officer, it was proper to reject her on probation.  Even assuming that the proffered

reason is sufficient to meet the Defendants' burden of production to rebut Basil's prima facie case, summary judgment is not warranted. Genuine issues of material fact remain at to the ultimate question of whether Basil was the victim of discrimination based on her gender. Viewed in the light most favorable to the Plaintiff, the evidence could convince a reasonable finder of fact that the manner in which the Plaintiff was terminated shows that the proffered reason was pretextual.

The close temporal proximity of her complaints to Corporal Jones and Captain McKenzie and the end of her employment, though not itself dispositive, is probative of pretext. *Taylor v. Peninsula Reg'l Med. Ctr.*, ___ F. Supp. 2d ___, No. WMN-12-3794, 2014 WL 936847, at *9 n.6 (D. Md. Mar. 10, 2014) (analyzing pretext in a retaliation claim). The Defendants' contention that this was a mere coincidence in timing is not a logical inference from the additional evidence here. In particular, the MdTA deviated from its usual practice in discharging Basil before her medical retirement was final. The Defendants also reversed course with regard to specific representations made to Basil. When Captain Perry informed her that her employment was terminated effective immediately on June 26, 2009, that determination conflicted with his earlier letter stating that her light duty assignment was extended through June 30, 2009. In addition, because Basil was considered to be rejected on probation, she would have normally been entitled to work through the end of the day, but was escorted off the premises immediately after meeting with Captain Perry on June 26, 2009. Thereafter, Basil was granted a further two-week extension to her light duty status, and her termination was not final until two weeks later. Perry Dep. 182-85. These inconsistent applications of MdTA policies could lead a reasonable jury to the conclusion

that Basil's rejection on probation was pretextual.  *Cf. Sears Roebuck & Co.*, 243 F.3d at 852-53 (fact that defendant offered multiple inconsistent justifications for an adverse employment action was, in itself, probative of pretext).

In sum, the Plaintiff has produced evidence "of sufficient probative force to reflect a genuine issue of material fact" as to whether she was the victim of intentional discrimination based on her gender.  *Phillips*, 2013 WL 5440802, at *15 (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001)).  Accordingly, the Defendants' Motion for Summary Judgment as to the Plaintiff's disparate treatment claim against the Maryland Transportation Authority in Count I is denied.

## II.     Count II - Hostile Work Environment

The Defendants further argue that the Plaintiff's hostile work environment claim in Count II fails as a matter of law.  "To establish a Title VII claim for sexual harassment in the workplace, a female plaintiff must prove that the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer."  *Ocheltree v Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (citations omitted).

The Defendants do not contend that the alleged conduct in this case was welcomed by Basil or that Noel's sexual advances were not based on her being a woman.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (explaining that "[c]ourts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to

someone of the same sex."). Instead, the Defendants argue that the "isolated" conduct cited by the Plaintiff is unsubstantiated and was not severe or pervasive enough to change the conditions of her employment or create an abusive work environment. Viewed in the light most favorable to the Plaintiff, and drawing all inferences in her favor, the evidence in the record certainly creates a genuine issue of material fact as to whether the offending conduct was sufficiently severe or pervasive enough to alter the conditions of Basil's employment.[6] Although certain events such as brushing shoulders, viewed in isolation, may seem innocent enough, when such conduct is repeated on a weekly or daily basis, it must be viewed as a whole. Apart from physical touching, there is ample evidence of a long course of unwanted sexual advances and comments toward the Plaintiff, several instances of which were corroborated by fellow employees. Additionally, there is evidence that Officer Noel acted similarly toward other several other women, further bolstering the Plaintiff's claims. The fact that the MdTA's own investigation failed to uncover sexually explicit emails that Basil said Officer Noel sent her does not warrant granting summary judgment in the Defendants' favor.

The Defendants also argue that Officer Noel's conduct is not imputable to the MdTA. "An employer will always be [directly] liable when its negligence leads to the creation or continuation of a hostile work environment." *Vance v. Ball State Univ.*, ___ U.S. ___, 133 S. Ct. 2434, 2452 (2013). Despite Basil's repeated complaints to higher-ranking officers, she was discouraged from complaining further, and Officer Noel's conduct

---

[6] Basil did testify that she was "not sure" if Officer Noel's behavior affected her job performance, and that "you'll have to ask my supervisors." Basil Dep. 116-17, 127. Her apparent fortitude in continuing to perform her job does not negate that her work environment may have been hostile as a result of Officer Noel's conduct.

continued unabated.  Indeed, Officer Noel was only terminated when the complaints came from the wife of another Captain.  A reasonable jury could conclude that the MdTA was negligent and thus directly liable.

Moreover, an employer may be vicariously liable for an employee's unlawful harassment "when the employer has empowered the employee to take tangible employment action against the victim, *i.e.*, to effect 'significant change in employment status.'"  *Vance*, ___ U.S. ___, 133 S. Ct. at 2443.  Even where such power is only held by a few actors, they likely rely on others who actually interact with the employee in question.  *Id.* at 2452.  "Under such circumstances, the employer may be held to have effectively delegated decision making authority to employees on whose recommendations it relies."  *Id.*  Officer Noel was superior in rank to the Plaintiff, and had an extremely close relationship with Captain Perry, who discharged Basil.  Although then-Executive Secretary Ronald Freeland eventually signed the official letter rejecting Basil on probation, the evidence could reasonably lead to the conclusion that Captain Perry actually made the decision because of his relationship with Officer Noel.  *See id* at 2446 (noting that an employee who can hire and promote others, with only "ministerial approval of his supervisor, who merely sign[s] the paperwork," is a supervisor under any definition of the term (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 747 (1998))).  There is evidence that Perry instructed the Secretary's Deputy, Roger Murphy, that Basil was going to be rejected on probation and asked him to prepare a letter to that effect.  Perry Dep. 177.  Therefore, a genuine issue of material fact remains as to whether the MdTA empowered Officer Noel, through Captain Perry, to take tangible employment action against Basil.

Finally as to Count II, the Defendants argue that the MdTA cannot be vicariously liable under *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 747 (1998), because it had no notice of the alleged harassment. The *Faragher/Ellerth* affirmative defense applies if the employer "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Brown v. Perry*, 184 F.3d 388, 395 (4th Cir. 1999). The Defendants argue that they exercised reasonable care and that Basil did not take advantage of the MdTA's established sexual harassment policy procedures. This argument is rather spurious as the record contains abundant evidence from which a reasonable finder of fact could determine that the MdTA had notice of sexually inappropriate conduct by Officer Noel toward fellow employees and took no action in response. Moreover, a reasonable jury could determine that the Plaintiff acted reasonably in refraining from complaining while she was still in the Academy, first relating her complaints to Sergeant McCullough, heeding his warning to "pick your battles," and eventually bringing her allegations to the attention of Corporal Jones, Captain McKenzie, and Captain Perry. Therefore, because the Defendants cannot show that no genuine issues of material fact remain as to either *Faragher/Ellerth* prong, summary judgment based on that affirmative defense is unwarranted.[7]

---

[7] The Plaintiff asks this Court to find that the Defendants waived this affirmative defense by failing to raise it until moving for summary judgment. *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1164 (4th Cir. 1985) (where affirmative defense was not asserted promptly by answer or other motion, resulting in prejudice, fairness required finding that affirmative defense has been waived). Although the Defendants were required to raise affirmative defenses in their Answer, their failure to do so here does not unduly prejudice the Plaintiff by depriving her of a reasonable opportunity to more fully explore the MdTA's notice of Officer Noel's conduct and the specific sexual harassment

Because a reasonable jury could find that the MdTA is directly or vicariously liable for allowing Officer Noel to create a pervasively abusive work environment, the Defendants' Motion for Summary Judgment as to the Plaintiff's Title VII hostile work environment claim against the Maryland Transportation Authority in Count II is denied.

## III.   Count III - Retaliation

The Defendants also argue that they are entitled to summary judgment as to Basil's retaliation claim in Count III.  To prove a prima facie case of retaliation under Title VII, a plaintiff must prove that:  (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) that there was a causal link between the protected activity and the adverse employment action.  *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998) (citation omitted).  The Supreme Court recently clarified that, unlike in the context of a status-based discrimination claim, the ultimate burden to prove a retaliation claim requires showing but-for causation.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2533 (2013).  Despite the ultimate burden to prove that the adverse employment action would not have occurred absent the employer's unlawful retaliation, "close temporal proximity" between protected conduct and the adverse employment action creates a genuine issue of material fact as to a causal nexus.  *Taylor v.*

---

reporting procedures she could have used.  Plaintiff was on ample notice that this common defense might be raised based on the issues presented in her lawsuit.  Moreover, as noted above, there is ample evidence in the record from which a reasonable jury could conclude that the MdTA knew or should have known of Officer Noel's conduct in the workplace and did not act reasonably to curtail it.  Finally, the sexual harassment policies are already outlined in documents in the record, and the Plaintiff presented evidence as to how her actual complaints were handled by the MdTA.  This Court sees no need for any additional discovery into those matters.  Accordingly, this Court declines to bar the Defendants from asserting the *Faragher/Ellerth* defense based on waiver.

*Peninsula Reg'l Med. Ctr.*, ___ F. Supp. 2d ___, No. WMN-12-3794, 2014 WL 936847, at *8 (D. Md. Mar. 10, 2014) (reasoning that *Nassar* does not significantly impact analysis of causal connection based on close temporal proximity in making a prima facie case).

In this case, the Defendants do not dispute that Basil engaged in protected activity when she reported Officer Noel's behavior to Corporal Jones and Captain McKenzie. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 273 (4th Cir. 2001) ("[I]nformal contacts with the EEO and informal complaints are also protected activities if the accused person or entity knew about them."). The Plaintiff also complained to another superior, Sergeant McCullough, and was discouraged from doing so, and refrained from making further reports, while Officer Noel's conduct continued. The Defendants also do not argue that there was an adverse employment action taken against Basil, fulfilling the second prong of a prima facie retaliation claim.

The Defendants rest their argument on the assertion that Captain Perry was not the decision maker, and Secretary Freeland, the actual decision maker, was not aware of any complaints. However, the Plaintiff need not show direct evidence that each individual had specific knowledge. *Murphy-Taylor v. Hoffman*, ___ F. Supp.2d ___, 2013 WL 4924031, *16 (D. Md. Sept. 12, 2013) (holding "it is hard to conceive that the [defendant] did not know of [plaintiff's] protected complaints, given that she made them to members of his senior staff … and the most serious of them, concerned . . . the [defendant's] own brother . . . ."). In light of the anti-fraternization and general conduct policies in place, and Basil's complaints to multiple superiors regarding violations and harassing conduct that began as soon as Basil

entered the Academy, there is a genuine issue of material fact as to the MdTA's knowledge of Basil's protected activity.

As to evidence of a causal connection, Basil met with Captain McKenzie on June 25, 2009 about Officer Noel's pattern of conduct toward herself and other women, and Captain Perry notified her that she was discharged by "rejection on probation" the next day. This evidence, taken in the light most favorable to Basil, shows that when her complaints finally reached Captain Perry, an adverse employment action was taken against her one day later. Such close temporal proximity between protected activity and an adverse employment action is sufficient evidence of a causal link to create an issue for the jury. *Taylor*, 2014 WL 936847, at *8 (finding that although a period of months between protected activity and termination has been deemed too attenuated, discharge "within weeks" raised an inference of causal connection). Although Captain Perry denies learning of Basil's complaints before the June 26, 2009 meeting during which she was terminated, his knowledge of the allegations against Officer Noel is a jury question. Thus, Basil has stated a prima facie case of retaliation under Title VII.

As in the context of a substantive discrimination claim, if the Plaintiff makes a prima facie case, the Defendants may rebut by articulating a legitimate nondiscriminatory reason for the adverse employment action. The Defendants state that Basil's discharge was merely the end of a lengthy administrative process, and it was a coincidence of timing that her last day at the MdTA was just after her latest complaints regarding sexual harassment. Again, even assuming that the Defendants' proffered reasons are sufficient to rebut Basil's prima facie case, she has pointed to evidence that her rejection on probation was pretextual. *Taylor*,

___ F. Supp. 2d ___, 2014 WL 936847, at *9 ("Thus, to demonstrate pretext, the employee must 'point to facts that render the employer's reason so questionable as to raise an inference of deceit.'" (quoting *Bryan v. Prince George's Cnty.*, No. DKC-10-2452, 2011 WL 2540759, at *6 (D. Md. July 5, 2011))).  First, close temporal proximity, even if not enough itself to show but-for causation in terms of pretext post-*Nassar*, is still relevant to demonstrating pretext.  *Id.* at *9 n.6.  Second, the inconsistencies in the MdTA's application of the light duty policy to the Plaintiff might suggest to a jury that rejection on probation was not the real reason for her discharge on June 26, 2009.  Finally, when combined with the known father-son relationship between Captain Perry and Officer Noel, it would not be unreasonable for a finder of fact to conclude that the decision to discharge Basil on June 26, 2009 was made with a retaliatory motive based on gender discrimination.  Because there are genuine issues of material fact on the ultimate question as to whether discriminatory retaliation was the but-for cause of Basil's termination on June 26, 2009, the Defendants' Motion for Summary Judgment as to the Plaintiff's retaliation claim against the Maryland Transportation Authority in Count III is denied.

## IV.    Counts IV & V - § 1983 Claims

Section 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."  42 U.S.C. § 1983.  The Plaintiff asserts claims pursuant to § 1983 in Count IV against Officer Noel for a violation of the Equal Protection Clause of the Fourteenth Amendment and Count V

against Captain Perry for retaliation in violation of the First Amendment. The Defendants move for summary judgment on Counts IV and V.

As an initial matter, this Court addresses the Defendants' arguments that Basil's § 1983 claims are barred by sovereign and qualified immunity. First, the Defendants argue that the Plaintiff's § 1983 retaliation claim against Captain Perry is really a claim against the MdTA that is barred by sovereign immunity under the Eleventh Amendment. U.S. Const. amend. XI. State agencies enjoy sovereign immunity from suits brought by individuals in federal court unless that immunity is abrogated by statute. *Lewis v. Bd. of Educ. of Talbot Cnty., Md.*, 262 F. Supp. 2d 608, 612 (D. Md. 2003) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979) (holding that § 1983 contains no abrogation of Eleventh Amendment immunity)). The Defendant Maryland Transportation Authority is such a state agency. *McDaniel v. Md.*, No. RDB-10-0189, 2010 WL 3260007, at *3 n.1 (D. Md. Aug. 18, 2010). Moreover, a state agency is not a "person" within the meaning of § 1983. *Rockwell v. Mayor of Balt.*, No. RDB-13-3049, 2014 WL 949859, at *11 (D. Md. Mar. 11, 2014) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989)). Likewise, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against . . . the state itself," and is therefore barred under § 1983. *Id.*

However, the § 1983 retaliation claim has been asserted against Captain Perry as an individual. Regardless of whether the Defendants are correct that the Plaintiff's original Complaint may have been ambiguous as to whether Captain Perry was sued in his official or individual capacity, Basil properly filed an Amended Complaint asserting her claim pursuant to § 1983 against Captain Perry in his personal capacity. *See McDaniel*, 2010 WL 949859, at

*6 (where complaint asserted § 1983 claim in both official and personal capacities, official capacity claims were dismissed, but personal capacity claims survived). As this Court previously noted in the *McDaniel* case, the plaintiff's § 1983 claims for violations of the Fourth and Fourteenth Amendments, asserted against MdTA officers as individuals, survived a motion to dismiss because the plaintiff alleged facts that if proven would show that the officers, acting under color of state law, deprived him of constitutional rights. *Id.* This is the very purpose of § 1983. Accordingly, because Basil has sued Captain Perry in his personal capacity, Eleventh Amendment sovereign immunity is not implicated in this case.

Second, the Defendants argue that qualified immunity bars Basil's § 1983 claims in both Count IV and Count V. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, this Court considers whether the facts, in the light most favorable to the Plaintiff, show that an official's conduct violated a constitutional right, and whether that right was clearly established such that it would be clear to an objectively reasonable officer that his conduct violated that right. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see Pearson*, 555 U.S. at 242 (holding that courts have the flexibility to apply the two-step procedure under *Saucier* in either order). In this case, based on the facts set forth above, a reasonable fact finder could conclude that Officer Noel and Captain Perry violated the Plaintiff's constitutional rights, and those rights—to equal protection of the laws and to free speech—were clearly established such that no

reasonable officer could have failed to know that his conduct violated that right. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002).

Because neither form of immunity bars the Plaintiff's § 1983 claims outright, this Court considers the Defendants' Motion for Summary Judgment as to the substance of those claims.

A. <u>Count IV - Equal Protection Claim Against Officer Noel</u>

Sexual harassment that creates a hostile or abusive workplace, by a person acting under color of state law, violates the Equal Protection Clause of the Fourteenth Amendment and is actionable pursuant to § 1983. *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994). A district court applies the same standards for a Title VII hostile work environment claim to a § 1983 claim for an Equal Protection Clause violation based on a hostile work environment. *Id.* As noted above in Part II of this Memorandum Opinion, the Plaintiff has adduced adequate evidence to create a question for the jury as to whether Officer Noel's conduct was sufficiently severe and pervasive to create a hostile work environment. From the beginning of Basil's training at the Academy, there is evidence of an almost constant stream of unwanted touching, face-to-face, telephone, and email contact, and inappropriate sexual remarks directed toward her by Officer Noel, which continued through the time he retired.

Moreover, for similar reasons that Officer Noel's conduct may be imputed to his employer in the context of Basil's Title VII hostile work environment claim, a reasonable fact finder could also determine that Officer Noel acted under color of state law for purposes § 1983. State employment is generally sufficient to render the defendant a state actor. *Tann v. Ludwikoski*, 393 F. App'x 51 (Table), 2010 WL 3262211, at *1 (4th Cir. Aug.

18, 2010) (per curiam) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 n.18 (1982)).

Despite the Defendants argument that Officer Noel was merely Basil's co-worker, his conduct could still constitute state action for purposes of § 1983. A case cited at length by the Defendants illustrates that mere status as a co-worker is not dispositive:

> It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of state law. If the officer is enabled to do what he did because of the authority of his office, even if what he did constituted an abuse of that authority, either by excessiveness of his conduct or because the act was not actually, although apparently, authorized, the act is under "color of law."

*Murphy v. Chicago Trans. Auth.*, 638 F. Supp. 464, 467 (N.D. Ill. 1986) (citation omitted)).

Viewing the facts in the light most favorable to the Plaintiff, Officer Noel's conduct was enabled by his position as a state officer. Officer Noel was one of Basil's instructors at the Academy. During that time, he is alleged to have made immediate sexual advances toward her, repeatedly prodded her about her relationship status, and used his authority to force her to do push-ups in isolation from other recruits. When Officer Noel was assigned to Tunnel Command, he continued to occupy a position of authority over Basil and his unwanted advances became more aggressive. It was known to Basil that Captain Perry and Officer Noel had a father-son relationship, and she consequently feared that reporting would jeopardize her employment. Basil Dep. 114-15. Even when she did report Officer Noel's conduct to other officers, Officer Noel's conduct continued. When she finally voiced her allegations to Captain Perry, she was terminated. A reasonable jury could conclude based on this evidence that a continuous pattern pervasive and abusive sexual harassment was facilitated by state power.

In sum, the Plaintiff has presented evidence sufficient to create a genuine issue of material fact whether her employment constituted a hostile work environment, depriving her of equal protection of the laws in violation of the Fourteenth Amendment. There is also a genuine issue of material fact whether Officer Noel's conduct was state action. Thus, the Defendants' Motion for Summary Judgment as to the Plaintiff's § 1983 claim in Count IV against Officer Noel is denied.

B. Count V - Retaliation Claim Against Captain Perry

To prove a claim of retaliation as a result of engaging in activity protected by the First Amendment, a § 1983 plaintiff must show that (1) her speech was protected; (2) the defendant's alleged retaliatory action adversely affected her constitutionally protected speech; and (3) a causal relationship exists between her speech and the defendant's retaliatory action. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir. 2000) (citations omitted). The Defendants argue that there is no basis to hold Captain Perry individually liable because he was not the public official responsible for Basil's termination, and they further argue that any action by Captain Perry did not cause her to be terminated.

Captain Perry was the Commander of the Academy at time the Plaintiff trained there, and continued to have authority over her while she was a probationary officer. After Basil was injured, Perry was her "main contact" for the medical retirement process and signed letters granting her extensions to light duty status, including the final letter extending her employment through June 30, 2009. Moreover, in the meeting of June 26, 2009, Captain Perry informed Basil that she was rejected on probation, and she was immediately escorted off the premises. Although the termination letter of July 15, 2009 was signed by Executive

Secretary Freeland, as noted above, there is evidence that Perry made the decision to reject Basil on probation and simply needed the Secretary's rubber stamp. Perry Dep. 177. Thus, a reasonable finder of fact could determine that Perry personally participated in Basil's termination in retaliation for exercising her free speech rights.

The Defendants' characterization of the MdTA decision making process is different, and they argue that Captain Perry would have been uninvolved. *See* Defs.' Reply 9-10 (citing Affidavit of Roger Murphy, ECF No. ECF No. 69-1). However, as noted above, the Supreme Court recently stated that where such power is only held by a few actors, they may effectively delegate decision making authority to employees on whose recommendations they rely. *Vance v. Ball State Univ.*, ___ U.S. ___, 133 S. Ct. 2434, 2452 (2013). Viewing the facts and inferences therefrom in the light most favorable to Basil as the non-moving party, a genuine issue of material fact remains whether Captain Perry exercised such authority in the decision to end her employment.

Given the evidence regarding the relationship between Officer Noel and Captain Perry, and the decision making hierarchy of the MdTA, the Defendants' argument as to lack of causation is similarly unavailing. Viewing the facts in the light most favorable to Basil, Captain Perry learned on June 24 or 25, 2009 of her complaints to several superiors about Officer Noel's conduct over a long time period, and she was terminated one or two days later. There is a clear question for the jury whether Captain Perry's action in response to Basil's complaints was the cause of her termination.

Despite the Defendants' argument that the Plaintiff only provides "bald conclusory allegations," there is evidence in this case that Basil's complaints, which are protected by the

First Amendment, caused her to be terminated in violation of those rights. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75-79 (1990) (holding that a public employee's First Amendment rights are adversely affected by decisions relating to promotion, transfer, recall, and hiring based on exercise of protected free speech). Based on the evidence of the close relationship between Officer Noel and Captain Perry, as well as evidence of Captain Perry's role in the Plaintiff's separation from employment, there remain genuine issues of material fact as to whether Captain Perry was a decision maker for purposes of § 1983 and whether his actions caused Basil's termination, in violation of her First Amendment rights. Therefore, summary judgment as to the § 1983 claim against Captain Perry in Count V is inappropriate and the Defendants' Motion is accordingly denied.

CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment (ECF No. 58) is DENIED.


Dated: April 23, 2014              _____/s/_____

                                       Richard D. Bennett
                                       United States District Judge