IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RENEE BASIL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-12-0556 |
| MARYLAND TRANSPORTATION AUTHORITY, et al., | * | |
| | * | |
| Defendants. | | |
| | * | |

* * * * * * * * * * * * *

## **MEMORANDUM OPINION**

Currently pending before the Court is Plaintiff Renee Basil's Motion Requesting Attorneys' Fees (ECF No. 112).[1]  The parties' submissions have been reviewed and no hearing is deemed necessary.  *See* Loc. R. 105.6 (D. Md. 2014).  For the reasons that follow, the Plaintiff's Motion (ECF No. 112) is GRANTED, and this Court awards attorneys' fees in the amount of $72,957.75 to Ms. Azeredo and Mr. Romberger, $148,766.00 to Mr. Doty and Mr. Saxena, and $10,788.92 in costs and expenses, plus post-judgment interest running from July 24, 2014.

## **BACKGROUND**

This Court has previously summarized the facts of this case in its April 23, 2014 Memorandum Opinion, and only a short summary is necessary here.  Plaintiff Renee Basil

---

[1] Also pending before the Court is Defendant Maryland Transportation Authority's Motion for Protective Order (ECF No. 124).  By letter, the parties acknowledged that the motion is now moot.  *See* ECF No. 128.  Accordingly, the motion will be DENIED AS MOOT at this time.

enrolled in the Maryland Transportation Authority ("MdTA") Police Academy on August 1, 2007 and completed her training on February 22, 2008. Defendant Officer Michael Noel had been an MdTA employee since 1989 and was Basil's Motor Vehicle Law instructor. After graduating from the Academy in February 2008, Basil was assigned to the Baltimore Harbor Tunnel Command. Soon thereafter, however, she sustained a dog bite injury that left her unable to return to full police officer duty. She was placed on light duty while awaiting a determination concerning her application for medical retirement.[2] MdTA officers seeking medical retirement are routinely assigned to light duty positions while awaiting the finalization of the approval process. While on light duty, Basil worked in proximity to Officer Noel.

In June of 2009, Basil complained to her supervisors about harassing conduct by Officer Noel. Soon thereafter, her employment was terminated. Administrative proceedings related to her termination followed.

On September 21, 2009, Basil timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging a continuing pattern of harassment. In response to the EEOC Charge, the MdTA undertook an investigation of the allegations against Officer Noel. The investigator, who had never conducted an EEOC investigation before, produced a written report, finding nothing inappropriate in the emails and concluding that no sexual harassment or retaliation took place.

---

[2] Basil was bitten while attempting to help a woman in the street who had been knocked down by the dog. Though Basil was technically not on duty with the MdTA at the time of the dog bite, her injury was deemed to have been "while in the line of duty." Basil Dep. 81-82.

On February 22, 2012, Basil filed suit in this Court against the Maryland Transportation Authority, Officer Noel, and Captain Perry.  On or about March 10, 2012, the EEOC closed its file and issued Basil a right to sue letter.  Basil subsequently filed an Amended Complaint, alleging disparate treatment (Count I), hostile work environment (Count II), and retaliation (Count III) against the MdTA in violation of Title VII, 42 U.S.C. § 2000e, *et seq*.  Additionally, Basil alleged individual claims pursuant to 42 U.S.C. § 1983 against Officer Noel for subjecting her to a hostile work environment in violation of the Equal Protection Clause (Count IV) and against Captain Perry for violating her First Amendment rights (Count V).

The Defendants moved to dismiss the Amended Complaint, and this Court denied the Motion to Dismiss on February 15, 2013.[3]  Mem. Op. & Order, ECF Nos. 23-24.  The parties began a period of discovery, which was bifurcated for the purposes of fact and expert discovery.

On October 31, 2013, counsel for Basil at that time—Ms. Ruth Ann Azeredo, Timothy W. Romberger, and the Law Office of Ruth Ann Azeredo LLC—moved to withdraw from the case, asserting that Plaintiff had "failed substantially in her legal obligation the [sic] Law Office of Ruth Ann Azeredo LLC."  *See* ECF No. 47.  This Court granted the motion to withdraw that same day.  Basil's present counsel, Daniel P. Doty entered his appearance on December 19, 2013.

---

[3] Defendants also filed a Motion to Dismiss the original Complaint, ECF No. 7, which was moot. Order, ECF No. 24.

After the conclusion of fact discovery, the Defendants moved for summary judgment. *See* ECF No. 58. This Court denied Defendants' motion with respect to all five counts. Thereafter, the parties engaged in expert discovery.

The seven-day jury trial in this case commenced on July 14, 2014. After Plaintiff concluded her case, the Court granted judgment as a matter of law to the Defendants on Count I (Title VII – disparate treatment), Count III (Title VI – Retaliation claim against MdTA), and Count V (42 U.S.C. § 1983 – Retaliation claim against Plaintiff's supervisor Captain Perry) and dismissed Captain Perry from the case. At the conclusion of trial, this Court entered judgment based upon the jury's verdict against the remaining Defendants; specifically, in accordance with the jury's verdict, the Court awarded $91,146 against the MdTA as to Count II (Title VII – Hostile Work Environment) and $36,000 against Officer Noel as to Count IV (42 U.S.C. § 1983 – Hostile Work Environment)

## **ANALYSIS**

Plaintiff prevailed on two claims at trial. To that extent, Plaintiff is a prevailing party entitled to an award of reasonable attorneys' fees under Title VII and 42 U.S.C. § 1988. *See* 42 U.S.C. 2000e-5(k); 42 U.S.C. § 1988; *see also E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 516 (4th Cir. 2012). "[A] litigant is a prevailing party for purposes of an attorney's fees award 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Bd. of Educ. of Frederick County v. Summers,* 358 F. Supp.2d 462, 465 (D. Md. 2005) (quoting *Hensley v. Eckerhart,* 461 U.S. 424 (1983)). As the United States Court of Appeals for the Fourth Circuit has explained:

> For purposes of § 1988, a party in whose favor a judgment is rendered, regardless of the amount of damages awarded, is the

> prevailing party. More specifically, a party has prevailed if there has been a material alteration of the legal relationship of the parties, and there is a judicial imprimatur on the change.

*McAfee v. Bozcar,* 738 F.3d 81, 88 (4th Cir. 2013) (internal quotation marks and citations omitted).

The calculation of a reasonable fee award, known as the lodestar award, is reached by multiplying the reasonable hours expended by a reasonable hourly rate. In assessing the reasonableness of the hours and rate claimed, the court considers the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987).

Where a plaintiff succeeds on only some of her claims, the determination of attorneys' fees is more complicated:

> Often all claims in a case (both successful and unsuccessful) will center on a common core of facts or related legal theories. In those situations, counsel's time will usually be devoted to the overall litigation, making it difficult to divide the hours expended on a claim-by-claim basis. In such a case, all claims should be regarded as related. Where, however, claims are unrelated or "fractionable," courts should treat them as if they had been raised in separate lawsuits and refuse to award fees for work on the unsuccessful claims.

*Imgarten v. Bellboy Corp.*, 383 F. Supp.2d 825, 839 (D. Md. 2005). Finally, the court should then "award[] some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Grissom v. The Mills Corp.*, 5489 F.3d 313, 321 (4th Cir. 2008) (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002)).[4]

1. **Degree of Success**

The primary dispute at this juncture with respect to attorneys' fees relates to the degree of success obtained by Plaintiff. Accordingly, this Court will address this issue first. As noted above, Plaintiff prevailed on only two of her five claims at trial. The Defendants contend that this Court should exclude significant portions of Plaintiff's requested fees because Plaintiff did not succeed on all of her claims and because, in Defendants' view, Plaintiff achieved only mild success. Plaintiff contends that she is entitled to the full amount because all of her claims "arose under the same statutes" and "were based upon a common core of facts." Mem. Supp. Mot. Attys.' Fees at 8, ECF No. 116.

At bottom, this case focused on Noel's harassing conduct towards Plaintiff and the MdTA's subsequent reactions—or lack thereof—to Plaintiff's complaints about the harassing conduct. In particular, the facts pertaining to Plaintiff's complaints to her superiors were relevant for both her successful and unsuccessful claims; with respect to her successful hostile workplace claim, those complaints show MdTA's knowledge. Those complaints were, of course, also relevant for Plaintiff's retaliation and disparate treatment

---

[4] This Court notes that these final two analytical steps, as summarized in *Grissom*, can—and, as in this case, often will—significantly overlap with the analysis of the first (time and labor expended) and eighth (amount in controversy and the results obtained) factors under the usual twelve factor lodestar analysis.

claims. Accordingly, the claims in this case depend upon a common core of facts, and the claims are related. As such, there is no basis for a reduction of the fees awarded.

Defendants also contend that the award should be adjusted because, in their view, Plaintiff achieved only "limited success – less than half of the Title VII statutory cap and substantially less than what could have been awarded under 42 U.S.C. 1983." Defs.' Opp'n at 21, ECF No. 122. However, this argument improperly discounts the substantial awards against the Defendants—amounting to $127,146 in total. In light of this significant relief awarded to the Plaintiffs, the Court finds no reason to reduce the amount of attorneys' fees awarded below the amounts noted above.

**2. Ms. Ruth Ann Azeredo and Mr. Timothy Romberger**

Attorney Ruth Ann Azeredo was Plaintiff's original counsel, and attorney Timothy Romberger entered his appearance on August 12, 2013. Both withdrew on October 31, 2013, shortly before the end of the discovery period. Ms. Azeredo, who has twenty-three years of experience, seeks $135,930.00 in legal fees, based upon 453.1 hours expended at a requested rate of $300/hour. Ms. Azeredo's firm also seeks to recover $9,205.50 for the 69.9 hours that Ms. Azeredo's paralegal, Tracy Stanforth, expended, billed at a rate of $95.00/hour. Mr. Romberger, who also has over twenty years experience, seeks $780.00 based upon 2.6 hours charged at the same rate.

Turning to the twelve lodestar factors, this Court first examines the time and labor expended by Ms. Azeredo and Mr. Romberger. Notably, despite the serious harassment found by the jury, Defendants never attempted to settle the case, which increased the time and labor spent by Plaintiff's counsel. This case involved allegations of sexual harassment,

employment discrimination, and retaliation arising under Title VII and 28 U.S.C. § 1983. Such employment actions can be quite complex and typical involve administrative exhaustion and significant discovery. *See Blake v. Baltimore Cnty., MD*, 12 F. Supp. 3d 771, 777 (D. Md. 2012). At least initially, Ms. Azeredo also operated under the normal time constraints with respect to administrative exhaustion and the various statutes of limitation. However, this case moved without any major complications during the period of Ms. Azeredo and Mr. Romberger's representation. The questions raised were no more complex nor difficult than the typical case of this type. The fact that one Defendant was a state government agency added some minor complexity compared to an employment case involving a private employer; however, those types of issues commonly arise. Accordingly, these factors favor neither an increase nor a reduction in the fee.

Turning to the quality of representation, this Court notes that both pretrial attorneys fared well. Both are experienced and effective attorneys, and they advocated zealously on behalf of Plaintiff. In particular, Ms. Azeredo's work during discovery revealed information and admissions that were vital to the Plaintiff's case.

In her Memorandum, Plaintiff asserts that Ms. Azeredo and Mr. Romberger are solo practitioners whose work on this case came at "the detriment of tending to issues in other existing matters." Mem. Supp. Mot. Attorneys' Fees at 17. However, Plaintiff's Memorandum fails to specifically identify any matter—especially one that would have billed at a higher rate—that Ms. Azeredo and Mr. Romberger neglected or missed due to their work on Plaintiff's case.

With respect to the undesirability of the case, Plaintiff asserts that several attorneys passed on representing Plaintiff both before Ms. Azeredo took on the matter and in the interim period between the representation of Ms. Azeredo and Mr. Romberger with respect to the early pretrial matters and Mr. Doty and Mr. Saxena with regard to the dispositive motions and trial. Moreover, Plaintiff's limited economic damages also made Plaintiff's case less desirable. On the other hand, however, Plaintiff's allegations with respect to Noel's conduct were shocking, and that conduct was clearly harassing. Accordingly, this Court finds that this factor does not weigh heavily in either direction.

As to the requested rates and counsel's expectations for payment, this Court first notes that both Ms. Azeredo and Mr. Romberger have requested rates ($300/hour) that are within the guidelines set by Appendix B to this Court's Local Rules.[5] However, it is important to note that Ms. Azeredo's retainer agreement with Plaintiff included a hybrid payment arrangement; Plaintiff was obligated to pay $125/hour during the representation, and Ms. Azeredo was entitled to an additional $175/hour upon a settlement or award in Plaintiff's favor. Accordingly, nearly half of the rate sought by Ms. Azeredo was not contingent and essentially guaranteed regardless of her performance or the outcome of the case. *See Blake v. Baltimore Cnty., MD*, 12 F. Supp. 3d 771, 776 (D. Md. 2012) (reducing requested rate in case where court had noted that "the fact that [plaintiff's attorneys] did not bear the full risk inherent in a contingency fee [was] significant"). Notably, Ms. Azeredo terminated her representation of Plaintiff, claiming that Plaintiff had breached the agreement.

---

[5] The relevant rates for purposes of Plaintiff's prior counsel are $275-$425 for lawyers admitted to the bar for 15-19 years, and $300-$475 for lawyers admitted to the bar for 20 years or more.

With respect to the nature and length of the professional development, there is minimal chance of repeated representation of Plaintiff by Ms. Azeredo or Mr. Romberger. This is not the type of case likely to give rise to repeat business, and, significantly, the relationship between Plaintiff and her pre-trial attorneys was terminated due to Plaintiff's alleged breach of the retainer agreement. While Plaintiff cites to *Mammano v. Pittson Co.*, 792 F.2d 1242, 1245 (4th Cir. 1986), for the proposition that serving as counsel at trial is not a prerequisite to the recovery of fees, that case is not precisely analogous in this case. In *Mammano*, the plaintiffs had been represented by both a local attorney and a public interest firm. The public interest firm withdrew from its representation shortly before trial "after providing valuable services to [the plaintiffs] because of conflicts with local counsel in order to avoid injuring their clients' case." *Id.* The Fourth Circuit specifically noted that the plaintiffs "were not left with counsel unfamiliar with the case" and that the firm's withdrawal appeared to be "in the best interest" of the firm's clients. *Id.* Finally, the court suggested that "an actual abandonment of a client's cause may justify the denial of an award under certain circumstances." *Id.*

In this case, Ms. Azeredo and Mr. Romberger withdrew their representation with approval of this Court. The stated reason for the withdrawal was Plaintiff's alleged breach of the retainer agreement. While it appears Plaintiff was given advance notice of counsels' intention to withdrawal, Plaintiff was left unrepresented for over a month and a half.[6] This Court did not inquire into prior counsel's reasons for withdrawal at the time, and of course

---

[6] Plaintiff's December 6, 2013 status report suggested that she had been in contact with Mr. Saxena for some time but that Mr. Saxena, and subsequently, Mr. Doty, were hesitant to take on Plaintiff's case immediately.

10

there are several legitimate reasons that counsel might reasonably do so. However, unlike *Mammano*, the withdrawal in this case was clearly for the benefit of prior counsel and not Plaintiff herself. While the facts before the Court at this time do not suggest that the total fee should be denied to prior counsel, this is a factor weighing against the reasonableness of a full award at $300/hour—a rate far above and beyond the original $125/hour rate guaranteed by prior counsel's retainer agreement.

The Court finds Ms. Azeredo and Mr. Romberger's fee request to be troubling in light of this fee structure and early withdrawal. Counsels' fee arrangement guaranteed some payment regardless of success, and counsel withdrew in the middle of the case, effectively abandoning Plaintiff. Counsels' $145,915.50 attorneys' fees request is patently unreasonable in light of these facts, and this Court will therefore reduce attorneys' fees for Ms. Azeredo and Mr. Romberger by 50%. Accordingly, the initial lodestar amount for Ms. Azeredo and Mr. Romberger will be $72,957.75.

### 3. Mr. Daniel Doty and Mr. Vinayak Saxena

While a significant amount of the lodestar analysis remains the same with respect to Mr. Doty and Mr. Saxena, there are also some significant differences as well. Mr. Doty and Mr. Saxena began their representation of Plaintiff after discovery and shortly before dispositive motions were due. They successfully defended against a Motion for Summary Judgment, which was filed the day after Mr. Doty's entry of appearance, and a Motion *in Limine*. Moreover, Mr. Doty, with the assistance of Mr. Saxena, represented Plaintiff at trial and prevailed on Counts II and IV. Their relationship with Plaintiff has been continuous,

and they appear to have taken the lead in both Plaintiff's efforts to collect on the judgment and the petition for attorneys' fees.

Despite Plaintiff's success at trial, Defendants dispute several aspect of Plaintiff's tiral counsel's fees. Defendants particularly take issue with the number of hours billed by Mr. Saxena and argue that his fee should be reduced because he played a very minimal role at trial and billed several hours for work performed before his formal entry of appearance. However, this Court finds that the hours billed by Mr. Saxena are reasonable. Although Mr. Saxena did not serve as lead counsel at trial, his role was clearly greater than a mere paralegal. Moreover, Defendants never requested any accounting and never attempted to settle this case; accordingly, they are in no position to now dispute Mr. Saxena's pretrial hours.

Both of Plaintiff's trial counsel have requested rates that fall within those laid out in Appendix B to this Court's Local Rules. Specifically, Mr. Saxena's requested rate is $190/hour, which is in the middle of the guideline range for an attorney of his experience. Mr. Doty's requested rate—$300/hour—is at the very top of the rates suggested by the Local Rules. However, unlike Plaintiff's prior attorneys, there was no hybrid fee arrangement and no payment was guaranteed.[7] Nevertheless, Defendants contend that Mr. Doty's requested rate is unreasonable because it exceeds both his actual monthly billing rate and the effective rate according to the amounts claimed in the quarterly reporting period statements that Mr. Doty provided before trial. *See* Defs.' Opp'n at 13-14, ECF No. 122. This position, however, discounts the fact that recovery of fees by Mr. Doty was contingent

---

[7] On the other hand, neither Mr. Doty nor Mr. Saxena have identified any work—whether higher paying or otherwise—on which they passed due to their engagement with Plaintiff.

upon his success (rather than a monthly fee). In light of Mr. Doty's experience and the circumstances of this case, Mr. Doty's claimed rate of $300/hour is not unreasonable.[8]

After weighing all of the relevant factors, this Court finds that Mr. Doty and Mr. Saxena's requested amount is reasonable. Accordingly, this Court will award $148,766.00 in attorneys' fees to Mr. Doty and Mr. Saxena.

### 4. Costs and Expenses

On January 30, 2015, the Clerk of Court entered an order taxing $10,099.56 in costs against Defendants pursuant to the Bill of Costs. In her Motion for Attorneys' Fees, Plaintiff requests an additional award of $2,328.92 for costs incurred by Ms. Azeredo plus another $8,460.00 in expert costs.

The only mention of costs in Defendants' opposition pertains to "all deposition costs for all expert witnesses and fees associated with the unsuccessful claims." Defs.' Opp'n at 22. As noted above, however, this Court has determined that Plaintiffs' claims were related and arose from a common core of facts. Accordingly, this Court will not reduce Plaintiffs' requested amount and will award an additional $10,788.92 in costs and expenses.

### CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Attorneys' Fees (ECF No. 112) is GRANTED, and this Court awards attorneys' fees in the amount of $72,957.75 to Ms. Azeredo and Mr. Romberger, $148,766.00 to Mr. Doty and Mr. Saxena, and $10,788.92 in additional costs and expenses, plus post-judgment interest running from July 24, 2014.

---

[8] Moreover, Defendants did not request the quarterly statements and never sought to settle this action; only now do they complain now that they have lost the case. *See* Local Rule App'x B at § 2.c, n.3 ("Opposing counsel may not seek a denial or reduction of fees from the court if he/she did not first request that such statements be provided.").

A separate order follows.


Dated: February 5, 2015                         _____/s/_____
                                                Richard D. Bennett
                                                United States District Judge